IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAVID DOMINGUES                                                                                     PLAINTIFF

v.                                  Case No. 5:15-cv-5128

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON                                            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff David Domingues filed this action against Defendant Liberty Life Assurance Company of Boston pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. In his complaint, Plaintiff alleges that his claim for Long Term Disability ("LTD") benefits was wrongly denied by Defendant. The Administrative Record has been filed, and both parties have submitted briefs. (ECF Nos. 14, 15). The Court finds the matter ripe for consideration.

**I. BACKGROUND**

In October 1993, Wal-Mart Stores, Inc. ("Wal-Mart") hired Plaintiff. In 2012, Plaintiff became Vice President of Global Business Process for Wal-Mart. Plaintiff was a participant in the Wal-Mart Stores, Inc. Associates Health and Welfare Plan (the "Plan"), which was insured by a Group Disability Income Policy (the "Policy") issued by Defendant.

As Vice President of Global Business Process, Plaintiff described his duties as "leveraging global talent and process to improve specific markets." Plaintiff's job requires him to travel 50-60% of the time, and his job involves use of a telephone, computer, and requires attendance at meetings.

The Policy provides that a participant may receive LTD benefits if the party is "disabled."[1] To be entitled to benefits, a participant must present proof of: (1) disability, (2) regular attendance of a physician, and (3) appropriate available treatment. "Proof" is defined as evidence to support a claim for benefits and includes, but is not limited to, (1) a claim form completed and signed by the person claiming benefits; (2) an attending physician's completed and signed statement; and (3) the provision by the attending physician of standard diagnosis, chart notes, lab findings, test results, x-rays, and/or other forms of objective medical evidence in support of a claim for benefits.

### A. Plaintiff's Claim for LTD Benefits

On December 3, 2012, Plaintiff became ill and was required to be away from work.[2] On December 10, 2012, Plaintiff went to his medical care provider, Dr. John Smiley, presenting viral-like symptoms, including joint and muscle pain, cough, headache, fatigue, and fever. In January 2013, Plaintiff was hospitalized with flu-like symptoms, nausea, weakness, cold intolerance, and jaundice. In February 2013, Plaintiff underwent a liver biopsy, revealing cirrhosis of the liver.[3] On March 5, 2013, Dr. Smiley noted that Plaintiff had Stage IV cirrhosis of the liver and alcohol dependence, and recommended that Plaintiff completely cease drinking.

In March 2013, Plaintiff made a claim for LTD benefits due to his diagnosis of cirrhosis, as well as symptoms of fatigue. Defendant initially approved Plaintiff for LTD benefits and

---

[1] For the initial twelve months of the claim life, a participant is deemed disabled if, due to injury or sickness, he is unable to perform the material and substantial duties of his "Own Occupation," defined as the occupation the participant held at the time the disability began. After the initial twelve months, a participant is disabled if he is unable to perform the material and substantial duties of "Any Occupation," defined as any occupation the participant is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

[2] Plaintiff attempted to return to work on January 29, 2013. His last day of work was January 30, 2013.

[3] Cirrhosis is a chronic degenerative disease in which normal liver cells are damaged and are replaced by scar tissue. 2 Maureen Haggert et al., *The Gale Encyclopedia of Medicine* 1173 (5th ed. 2015).

began paying benefits on April 6, 2013, subject to periodic evaluations to determine ongoing disability.[4]

In August 2013, Plaintiff was seen at the Mayo Clinic for evaluation for a possible liver transplant. The Mayo Clinic's report confirmed that Plaintiff had cirrhosis, which the report suggested was likely due to alcohol-induced liver disease. The report also found that Plaintiff had possible early hepatic encephalopathy[5] due to his reported fatigue, mental fogginess, and sleep disturbance, as well as mild microcytic anemia. The report stated that Plaintiff denied any overt confusion or disorientation, and noted that since he began abstaining from alcohol, he began feeling somewhat better overall and that his jaundice was gone. However, Plaintiff was not placed on the transplant list at that time, and was scheduled for a follow-up appointment in six months for re-evaluation.

On September 9, 2013, Plaintiff saw Dr. Smiley again. Dr. Smiley's notes from this visit indicated that Plaintiff's liver was not to the point where he could be considered for a transplant. Dr. Smiley noted that Plaintiff had some regeneration and improvement of his overall liver function, but found that Plaintiff was experiencing some hepatic encephalopathy, which resulted in mental fogginess and confusion if Plaintiff did not regularly take the medicine lactulose. Dr. Smiley also noted that Plaintiff was unable to return to work. Dr. Smiley noted that Plaintiff had not been sleeping well and had been experiencing anxiety.

On October 13, 2013, Dr. Smiley completed a restrictions form at Defendant's request. Dr. Smiley indicated that Plaintiff was capable of performing light work on a full-time basis,

---

[4] Defendant later sent Plaintiff a revised approval letter indicating that Plaintiff's LTD claim is also subject to a limiting provision in the Policy because his condition is related to "Mental Nervous and/or Substance Abuse".

[5] Hepatic encephalopathy is a disease in which toxic substances accumulate in the blood because the liver can no longer remove the excess substances. 5 Maureen Haggerty & William A. Atkins, *The Gale Encyclopedia of Medicine* 3044-45 (5th ed. 2015). Symptoms can include trouble concentrating; lethargy; progressive loss of memory and thinking abilities; disorientation; change in personality; and deep coma. *Id.* at 3045-46.

defined as lifting and carrying up to twenty pounds occasionally, sitting at least occasionally, and standing and walking frequently. Dr. Smiley noted that Plaintiff was diagnosed with alcohol-induced fatty liver disease, and that Plaintiff occasionally suffered from hepatic encephalopathy, which made decision-making difficult at the level of performance required for Plaintiff's job. Dr. Smiley imposed work restrictions from January 8, 2013 to September 9, 2014.

On November 26, 2013, Defendant ordered an independent peer review of Plaintiff's clinical records to be conducted by Dr. Sunil Sheth, a board-certified gastroenterologist. Dr. Sheth did not meet with or examine Plaintiff, but rather reviewed his medical file. Dr. Sheth agreed with Dr. Smiley's October 13, 2013 assessment that Plaintiff could perform full-time sedentary or light work. Dr. Sheth noted that Dr. Smiley's restrictions and limitations on Plaintiff would be indefinite until Plaintiff either improves entirely or worsens and requires a liver transplant. Dr. Sheth stated that if Plaintiff performs full-time sedentary or light work and becomes confused or fatigued, he may need to be reassessed by his primary care doctor and liver doctor.

On December 10, 2013, Defendant sent Plaintiff a letter advising him that his LTD benefits would be terminated as of December 8, 2013. The letter referenced Dr. Sheth's peer review and Dr. Smiley's October 13, 2013 restrictions form, and concluded that Plaintiff is capable of performing his own occupation, which consists of sedentary to light work, as defined by the Department of Labor Dictionary of Occupational Titles. The letter stated that Plaintiff's medical records did not contain physical restrictions and limitations precluding Plaintiff's performance of his own occupation, and as such, Plaintiff was not "disabled" under the Policy.

**B. Plaintiff's Appeal**

On January 22, 2014, Plaintiff provided Defendant with a letter of appeal. Plaintiff's claim was referred to Defendant's appeal review unit. Defendant agreed to continue paying Plaintiff's LTD benefits past December 8, 2013 until the completion of the appeal review process.

On March 21, 2014, Defendant ordered independent peer reviews of Plaintiff's disability claim file, including all new information received upon appeal, to be conducted by Dr. Sheth and Dr. Philip Barry, a board-certified neuropsychologist. Dr. Sheth and Dr. Barry did not meet with or examine Plaintiff, but rather reviewed his medical file and spoke with Dr. Smiley on the telephone. Dr. Sheth found that Plaintiff had alcoholic cirrhosis, and that the medical record provided a reasonable explanation for Plaintiff's reported symptoms of loss of concentration, fatigue, and memory loss due to encephalopathy. Dr. Sheth noted that Plaintiff's symptoms of loss of concentration, fatigue, and memory loss seemed to improve when Plaintiff took lactulose. Dr. Sheth found that, as of December 9, 2013, Plaintiff had no physical impairments from a gastrointestinal standpoint, and thus he had no restrictions or limitations related to his alcoholic cirrhosis. However, Dr. Sheth stressed that he could not comment on Plaintiff's neuropsychiatric symptoms because no formal evaluation had been done.

Also in the March 21, 2014 report, Dr. Barry noted that while Plaintiff was at the Mayo Clinic for liver-transplant evaluation, he was seen by a psychologist who gave him a Personality Assessment Inventory, to which Plaintiff's scores were within normal limits and reported that Plaintiff was a good candidate for a transplant in terms of his psychological stability. Dr. Barry stated that the Mayo Clinic psychologist did not report any cognitive dysfunction or related complaints from Plaintiff. Dr. Barry also stated that although Plaintiff had expressed cognitive-

related complaints to Dr. Smiley, there was no objective evidence of cognitive dysfunction in the records. Thus, Dr. Barry found that Plaintiff had no neuropsychological impairments. Dr. Barry noted that Plaintiff's primary limitation involved excessive fatigue and lack of mental stamina secondary to his medical status. Dr. Barry stated that Plaintiff's complaints of fatigue were consistent with the nature of his medical problems. Dr. Barry found that the medical record indicated that Plaintiff is limited with regard to the amount of time he can function in any demanding job, and that he is unable to travel in any business capacity. Dr. Barry concluded that, as of December 9, 2013, Plaintiff is impaired to the extent that he cannot perform his own job on a full-time basis because of his limitations related to fatigue and stamina.

On April 22, 2014, Dr. Smiley completed a Medical Source Statement, listing Plaintiff's various symptoms,[6] restrictions, and limitations. Dr. Smiley stated that Plaintiff's restrictions included only being able to sit or stand for twenty minutes at a time before needing to move; that Plaintiff was only capable of sitting and standing/walking for less than two hours per day; that Plaintiff was only able to work approximately ten hours per week; and that Plaintiff would require more than ten unscheduled breaks per day. Dr. Smiley estimated that Plaintiff's symptoms would likely cause him to be off task at least twenty-five percent of each workday. Dr. Smiley noted that Plaintiff could tolerate normal work-related stress. Dr. Smiley stated that Plaintiff's impairments would likely produce "good days" and "bad days," and that Plaintiff would likely be absent from work more than four days per month due to his impairments or treatment.

---

[6] Dr. Smiley listed twenty-four symptoms: chronic fatigue, right upper quadrant pain; recurrent fevers; dizzy spells; nausea and vomiting; muscle and joint aches; abdominal pain; difficulty concentrating; weakness; hot/cold spells; tremors; enlarged spleen; jaundice; esophageal varices; ascites; loss of appetite; urinary infrequency; confusion; sleep disturbance; recurrent/persistent diarrhea; bowel incontinence; muscle wasting; anemia; and weight loss.

On May 6, 2014, Defendant ordered an additional independent peer review of Plaintiff's disability claim file to be conducted by Dr. Teddy Bader, board certified in gastroenterology, transplant hepatology, and internal medicine. Dr. Bader did not meet with or examine Plaintiff, but rather reviewed his medical file and spoke with Dr. Smiley on the telephone. On May 21, 2014, Dr. Bader completed his report, confirming the previous diagnosis of alcoholic cirrhosis of the liver, and noting that Dr. Smiley indicated to him on May 12, 2014 that Plaintiff's April 7, 2014 liver function blood tests suggested that Plaintiff resumed heavy drinking for at least two weeks prior to the liver function tests. Dr. Bader stated that hepatic encephalopathy could vary in severity from day to day, but found that Plaintiff had not undergone either of the two methods for establishing a diagnosis of hepatic encephalopathy, and concluded that there was no objective medical evidence to adequately support Plaintiff's diagnosis of hepatic encephalopathy. Dr. Bader found that, from December 9, 2013 onwards, there was no support for physical impairment, restrictions, or limitations from a hepatology perspective.

On June 17, 2014, Defendant sent a letter to Plaintiff stating that, after a review of all medical documentation found in Plaintiff's claim file, Defendant was upholding the termination of Plaintiff's LTD benefits. The letter stated that Plaintiff had not submitted evidence showing that he had any psychiatric or psychological impairment, or that he had obtained treatment for a mental health condition, cognitive deficits, or obtained psychiatric treatment for his alcohol dependence. The letter concluded that there was insufficient medical evidence to establish that Plaintiff's medical condition was of a nature and severity that prevents him from performing the duties of his own position, and therefore, after December 8, 2013, Plaintiff did not meet the definition of "disabled" as defined in the Policy.

7

On June 1, 2015, Plaintiff filed this ERISA action against Defendant, alleging that Defendant wrongfully denied and terminated his LTD benefits and seeking to enforce his rights to all benefits due under the Policy.

## II. STANDARD

ERISA provides that a plan participant may bring a civil action to "recover benefits due him under the term of the plan" and "to enforce his rights under the term of the plan." 29 U.S.C. § 1132(a)(1)(B). Although ERISA provides no standard of review, the Supreme Court instructs the reviewing court to conduct a *de novo* review unless the plan gives the "administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the term of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If a plan gives the administrator discretionary authority, the court should review the administrator's decision under a deferential "abuse of discretion" standard. *Janssen v. Minneapolis Auto Dealers Ben. Fund*, 477 F.3d 1109, 1113 (8th Cir. 2006). The Eighth Circuit requires "express discretion-granting language" different from the common proof-of-loss provisions usually found in insurance policies. *Brown v. Seitz Foods, Inc., Disability Benefit Plan*, 140 F.3d 1198, 1200 (8th Cir. 1998).

The Policy provides, in relevant part, that "[Defendant] shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. [Defendant's] decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding." (Admin. Rec. 40).[7] Plaintiff argues that, although this language appears to give Defendant absolute and complete authority to interpret the Policy, it does not actually do so because it does not explicitly state that Defendant has "complete and

---

[7] The Administrative Record is found on the record in three separate filings with multiple attachments to each filing. (ECF Nos. 11-13). The Administrative Record's pagination is sequential throughout all filings. Rather than cite to the specific document number and attachment, the Court will cite to "Admin. Rec." followed by the page number.

8

absolute, non-reviewable authority." Defendant argues that the Policy clearly and unequivocally grants discretionary authority to Defendant to determine eligibility for benefits or construe the terms of the plan.

The Court agrees with Defendant. The Policy clearly gives Defendant discretionary authority to determine eligibility for benefits and to construe the Policy's terms. This reading of the Policy is supported by other Arkansas federal courts that found identical language to grant discretionary authority. *See Gerhardt v. Liberty Life Assurance Co. of Boston*, No. 4:06-cv-1595 JLH, 2008 WL 2476692, at *11 (E.D. Ark. June 17, 2008); *Chavez v. Liberty Life Assurance Co. of Boston*, No. 2:05-cv-2098 RTD, 2006 WL 2787045, at *2 (W.D. Ark. Sept. 27, 2006).

Thus, the Court must review Defendant's decision denying Plaintiff's LTD benefits under an "abuse of discretion" standard. "Review of an administrator's decision under an abuse of discretion standard, though deferential, is not tantamount to rubber-stamping the result." *Torres v. UNUM Life Ins. Co. of Am.*, 405 F.3d 670, 680 (8th Cir. 2005). The Court will only reverse Defendant's decision if it is found to be arbitrary and capricious. *Groves v. Metro. Life Ins. Co.*, 438 F.3d 872, 874 (8th Cir. 2006). The Eighth Circuit has stated that "[w]hen a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, it should not be disturbed." *Ratliff v. Jefferson Pilot Fin. Ins. Co.*, 489 F.3d 343, 348 (8th Cir. 2007). Substantial evidence is defined as "more than a scintilla but less than a preponderance." *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000). The Eighth Circuit has also stated that "[t]he discretionary decision of a plan administrator is not unreasonable merely because a different, reasonable interpretation could have been made." *Ratliff*, 489 F.3d at 348. "The requirement that the [plan administrator's] decision be reasonable should be read to mean that a decision is reasonable if a reasonable person *could* have reached a similar decision, given

9

the evidence before him, not that a reasonable person *would* have reached that decision." *Jackson v. Metro. Life Ins. Co.*, 303 F.3d 884, 887 (8th Cir. 2002). The Court may consider the quantity and quality of evidence before Defendant, and the Court is mindful of the Eighth Circuit's instruction that courts should be hesitant to interfere with the administration of an ERISA plan. *See Groves*, 438 F.3d at 875.

Where the plan administrator is the same party that pays claims for benefits, like in the case here, the Court must consider the conflict of interest arising from such an arrangement as a factor in its reasonableness determination.[8] *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112-19 (2008). The importance of this factor will vary depending on whether the circumstances suggest a high or low likelihood that the conflict of interest affected the benefits decision. *Id.* at 117. For example, if an administrator has a history of biased claims administration, the factor may be more significant. *Id.* However, if the administrator has taken "active steps to reduce bias and to promote accuracy," the factor will be less significant. *Id.*

### III. DISCUSSION

Defendant's review of Plaintiff's medical records focused on two issues: whether Plaintiff had any physical restrictions or limitations as a result of his cirrhosis and whether Plaintiff had restrictions or limitations due to hepatic encephalopathy and related neuropsychiatric symptoms such as fatigue, memory loss, and loss of concentration. Defendant denied Plaintiff's benefits, and later upheld the denial, after determining that there was

---

[8] In addition to this factor, the Court's reasonableness determination must also consider five other factors: "(1) whether the administrator's interpretation is consistent with the goals of the Plan; (2) whether the interpretation renders any language in the Plan meaningless or internally inconsistent; (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the administrator has interpreted the relevant terms consistently; and (5) whether the interpretation is contrary to the clear language of the Plan." *Torres*, 405 F.3d at 680.

10

insufficient medical evidence to establish that Plaintiff's condition prevented him from performing his own job.

The crux of Plaintiff's argument is that Defendant improperly disregarded overwhelming medical evidence, including the medical conclusions of Dr. Smiley—who examined him—and Dr. Barry—who opined that Plaintiff is unable to work at his own job on a full-time basis due to fatigue and stamina issues—and instead relied on the conclusions of the other peer reviewers, who did not examine Plaintiff. The Supreme Court has recognized that plan administrators are not obligated to give special deference to the opinions of treating physicians under ERISA:

> Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). When there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless the record does not support denial. *Coker v. Metro. Life Ins. Co.*, 281 F.3d 793, 799 (8th Cir. 2002).

Defendant denied Plaintiff's benefits on the basis that Plaintiff provided no objective medical evidence to support a finding of disability. For the reasons that follow, the Court finds that Defendant abused its discretion in doing so.

Plaintiff argues that the Policy required only that he provide "proof" of an ongoing disability, regular attendance of a physician, and available treatment. The Policy defines "proof" as including a standard diagnosis, chart notes, lab findings, exam results, and/or other objective medical evidence. Defendant correctly points out that Plaintiff did not provide any objective medical exam results regarding his hepatic encephalopathy and associated fatigue and stamina

11

issues. However, the record shows that Plaintiff did provide chart notes from Dr. Smiley and the Mayo Clinic physicians stating that Plaintiff has encephalopathy, and prescribing treatment for encephalopathy. (Admin. Rec. 256, 261-63, 303-06). Dr. Sheth's first peer review stated that he agreed, and that the medical record supported a finding that Plaintiff had encephalopathy. Defendant's December 10, 2014 letter denying Plaintiff's benefits recognized these medical records, and stated explicitly that Plaintiff had "mild encephalopathy."[9] (Admin. Rec. 233). Plaintiff appealed the decision, arguing that his encephalopathy was not mild, and that it was worsening, thus further affecting the cognitive abilities needed to do his job.

Defendant's June 17, 2014 letter upholding denial of benefits took a different approach, arguing instead that there was insufficient evidence to show that Plaintiff had any cognitive deficits, or that if he did, that he was effectively disabled as a result. The letter relied on Dr. Bader's conclusion that the medical record did not contain any objective medical exam results or documentation supporting a formal diagnosis of hepatic encephalopathy or supporting Plaintiff's complaints of chronic fatigue.[10]

The Court finds that Defendant abused its discretion in denying the benefits because it did not tell Plaintiff that he needed to submit additional information—objective medical evidence of hepatic encephalopathy and/or chronic fatigue—to perfect his claim. It is not necessarily an abuse of discretion to deny a claim because of a lack of objective medical evidence to support a

---

[9] The letter minimized the impact of Plaintiff's encephalopathy by stating that the record also showed that Plaintiff's encephalopathy-related issues are treatable with lactulose.

[10] Defendant's peer-review instructions to Dr. Bader told him to "[b]ase [his] opinion on verifiable clinical exam findings, diagnostic test evidence, and verifiable functional data." (Admin. Rec. 106). These instructions do not account for the fact that the Policy allows for other types of proof to be submitted, such as chart notes, which Plaintiff did submit. Although the Mayo Clinic chart notes opined that Plaintiff possibly had hepatic encephalopathy, Dr. Smiley's chart notes stated definitively that Plaintiff had hepatic encephalopathy and prescribed treatment. (Admin. Rec. 263). The Court finds that this is sufficient objective "proof" of hepatic encephalopathy, as defined by the Policy. Thus, the medical record does not support denial of Plaintiff's benefits solely on the basis that there is insufficient evidence of hepatic encephalopathy and associated issues.

12

finding of disability. *See Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 813 (8th Cir. 2006); *Pralutsky v. Metro Life Ins. Co.*, 435 F.3d 833, 839 (8th Cir. 2006). However, before this can be done, the claimant must be given notice of the additional information that is needed and given an opportunity to provide the information and perfect the disability claim. A written notice of an adverse determination must include:

> (i) The specific reason or reasons for the adverse determination;
> (ii) Reference to the specific plan provisions on which the determination is based;
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review[.]

*Brown v. AT&T Long Term Disability Plan for Mgmt. Employees*, No. 2:07-cv-0059 JLH, 2008 WL 795635, at *12 (E.D. Ark. Mar. 20, 2008) (quoting 29 C.F.R. 2560.503-1(g)). "In simple English, what this regulation [29 C.F.R. 2560.503-1] calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries. . . . [i]f the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it." *Id.* (quoting *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997)).

Defendant's December 10, 2014 letter denying LTD benefits summarized the reasons for denying the claim as being "that the totality of the medical evidence does not support continued functional impairment preventing you from performing your Own Occupation." (Admin. Rec. 232). The letter stated further that an appeal request must include the reasons for the appeal and should include any updated or additional information the claimant wishes to be considered. The letter did not list any specific information that could be submitted to further perfect Plaintiff's

13

disability claim, likely because Dr. Smiley and Dr. Sheth agreed that Plaintiff could do sedentary or light work despite his cirrhosis and encephalopathy.

Plaintiff subsequently appealed the denial of his benefits, arguing that his encephalopathy was worsening, affecting his cognitive abilities. The March 21, 2014 peer review conducted by Dr. Barry found that, as of December 9, 2013, Plaintiff was impaired to the extent that he could not perform his own job on a full-time basis because of his limitations related to stamina and fatigue. Likewise, Dr. Smiley's April 22, 2014 Medical Source Statement found that Plaintiff had multiple limitations and restrictions resulting from chronic fatigue, among other cognitive symptoms.

An April 22, 2014 letter from Defendant to Plaintiff stated that additional information was needed for Defendant to rule on the appeal review, but the letter did not specify what information was needed. (Admin. Rec. 141). Defendant's June 17, 2014 letter upholding denial of benefits also stated that "additional information was needed for appeal review." (Admin. Rec. 81).

The record shows that Defendant intended to have Plaintiff undergo an independent medical examination ("IME") with a physician specializing in Hepatology (Admin. Rec. 145), but for some reason, Defendant later informed Plaintiff that the IME would not take place. (Admin. Rec. 49, 82). Instead, Defendant ordered another peer review to be conducted, this time by Dr. Bader, who did not meet and examine Plaintiff, but merely spoke with Dr. Smiley and examined the medical claim file that Defendant previously found to lack certain information that was needed for the appeal review. Dr. Bader's peer review stated repeatedly that Plaintiff had not undergone any tests for establishing a diagnosis of hepatic encephalopathy, and thus he concluded that Plaintiff's medical file contained no objective medical evidence to adequately

establish Plaintiff's diagnosis of hepatic encephalopathy or to support his fatigue, energy, and cognitive issues. Dr. Bader specifically identified two medical examinations that would objectively test for the presence of hepatic encephalopathy and would provide information on his fatigue issues, but Defendant never requested that Plaintiff undergo either of these tests. Defendant subsequently upheld its denial of Plaintiff's benefits, citing Dr. Bader's peer review. Defendant also relied on Dr. Sheth's second peer review, which stated that Plaintiff had not undergone any formal neuropsychological examination. Defendant used this fact to conclude that no objective evidence supported a finding of impairment related to neuropsychological conditions such as chronic fatigue and stamina issues. However, Dr. Sheth's second peer review was written "[s]trictly from a gastrointestinal standpoint," and Dr. Sheth stressed that he could not comment "on the symptoms of fatigue, memory loss and loss of concentration, presumed to be from hepatic encephalopathy until [Plaintiff] has had formal neuropsychiatric evaluation." (Admin. Rec. 170-71).

The Policy authorized Defendant to demand that Plaintiff be examined or evaluated as deemed necessary to allow Defendant to evaluate Plaintiff's claim. (Admin. Rec. 39). Following the initial denial of his benefits, Plaintiff claimed that his encephalopathy was worsening, and that he no longer had the cognitive ability to work at his own occupation. Dr. Sheth and Dr. Bader's peer reviews stated that specific medical tests could evaluate whether Plaintiff had hepatic encephalopathy, and if so, to what extent it limited Plaintiff. However, despite Defendant's own admission that it needed more information to render a decision on the appeal, at no point did it ask Plaintiff to undergo these tests, nor does the record reflect that Defendant ever made Plaintiff aware of what specific information it needed for the appeal review. The Court finds that this was an abuse of discretion. *See Torgeson v. Unum Life Ins.*

15

*Co. of Am.*, 466 F. Supp. 2d 1096, 1129 (N.D. Iowa 2006) (stating that an ERISA plan administrator that was authorized to demand that the claimant undergo medical testing abused its discretion by denying benefits based solely on review of medical records that it had already concluded to be insufficient); *see also Brown*, No. 2:07-cv-0059 JLH, 2008 WL 795635, at *12 ("If the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it."). Dr. Bader made Defendant aware that specific medical examinations could determine whether Plaintiff had—and was disabled by—hepatic encephalopathy and chronic fatigue, but Defendant did not request that Plaintiff undergo these tests or otherwise provide the necessary information, despite having the power to do so. Instead, Defendant upheld its denial of Plaintiff's benefits based on a review of a medical record it previously determined to be insufficient and told him that he had exhausted his administrative remedies. For this reason, the Court finds that Defendant's denial of Plaintiff's LTD benefits under the Policy was an arbitrary and capricious abuse of discretion.

## IV. REMEDY

A reviewing court must remand a case when the court or agency fails to make adequate findings or explain the rationale for its decision. *Mayo v. Schiltgen*, 921 F.2d 177, 179 (8th Cir. 1990). This remedy is appropriate in ERISA cases. *Harden v. Am. Express Fin. Corp.*, 384 F.3d 498, 500 (8th Cir. 2004) (per curiam).

Defendant argues that if the Court finds that it abused its discretion by denying Plaintiff's benefits, the Court must remand this action to Defendant for further evaluation. Defendant states that the Policy's "own occupation" definition of disability applied only to Plaintiff's LTD claim from April 6, 2013, to April 5, 2014.[11] After that time period, Defendant argues that the "any

---

[11] Defendant also states that it paid Plaintiff benefits from April 6, 2013, to April 5, 2014, and thus there are no past due benefits to Plaintiff under the "own occupation" period. The record shows that Defendant did agree to pay

16

occupation" definition of disability applies to Plaintiff's claim.  Defendant states that it made no determination of Plaintiff's eligibility for benefits under the Policy's "any occupation" standard, and thus it argues that remand is needed for further evaluation as to whether Plaintiff is disabled under that standard.

The Court cannot tell from the record whether Plaintiff could return to "Any Occupation," as defined in the Policy.  Moreover, the Policy provides that any disability benefits which Plaintiff receives from the Social Security Administration are considered "Other Income Benefits" and must be deducted from any LTD benefits awarded to him under the Policy.[12] (Admin. Rec. 24, 29).  Therefore, the claim will be remanded for further consideration.

### V.  CONCLUSION

For the reasons discussed above, this action is **REMANDED** to Liberty Life Assurance Company of Boston, the plan administrator for the Wal-Mart Stores, Inc. Associates Health and Welfare Plan, for further consideration consistent with this Opinion.

**IT IS SO ORDERED**, this 8th day of May, 2017.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

benefits to Plaintiff through the appeal of his claim, which resulted in Plaintiff receiving benefits through June 18, 2014.  (Admin. Rec. 84).

[12] The record does not appear to indicate whether Plaintiff receives or has ever received disability benefits from the Social Security Administration, but if so, Defendant must also calculate the amount of "Other Income Benefits" to be deducted from any LTD benefits awarded to Plaintiff under the Plan, if any.